# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DOUG WALKER, an individual,

               Appellant,

v.

QUALITY LOAN SERVICE CORP.
OF WASHINGTON, a Washington
corporation; SELECT PORTFOLIO
SERVICING, INC., a Utah
corporation,

               Respondents,

CREDIT SUISSE FINANCIAL
CORPORATION, a Delaware
corporation; TICOR TITLE COMPANY,
a Washington corporation; REGIONAL
TRUSTEE SERVICES
CORPORATION, a Washington
corporation; AMERICAN BROKERS
CONDUIT; and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., a Delaware
corporation,

               Defendants.

NO. 65975-8-I

DIVISION ONE

ORDER CHANGING AND
REPLACING OPINION

The court, having determined a need to modify its opinion filed August 5, 2013,

now, therefore, it is hereby

ORDERED that the opinion be changed as follows:

The final sentence at page 21 of the opinion shall be reworded to provide:

If Walker is able to prove these underlying DTA violations, he may also be able to show that Quality and Select violated § 1692f(6) by threatening nonjudicial foreclosure.

It is further ORDERED that the amended opinion shall replace the original opinion filed herein.

DATED this ___ day of August ___, 2013.

_Leach, C.J._

_Dwyer, J._                    _Cox, J._

COURT OF APPEALS DIVISION I
STATE OF WASHINGTON
2013 AUG 26 AM 8:11

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DOUG WALKER, an individual, | ) | NO. 65975-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | AMENDED PUBLISHED |
| QUALITY LOAN SERVICE CORP. | ) | OPINION |
| OF WASHINGTON, a Washington | ) | |
| corporation; SELECT PORTFOLIO | ) | |
| SERVICING, INC., a Utah | ) | |
| corporation, | ) | |
| | ) | |
| Respondents, | ) | FILED: August 26, 2013 |
| | ) | |
| CREDIT SUISSE FINANCIAL | ) | |
| CORPORATION, a Delaware | ) | |
| corporation; TICOR TITLE COMPANY, | ) | |
| a Washington corporation; REGIONAL | ) | |
| TRUSTEE SERVICES | ) | |
| CORPORATION, a Washington | ) | |
| corporation; AMERICAN BROKERS | ) | |
| CONDUIT; and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

LEACH, C.J. — In this case we consider whether a property owner's preforeclosure sale remedies for alleged violations of the deeds of trust act, chapter 61.24 RCW (DTA), the Consumer Protection Act, chapter 19.86 RCW (CPA), and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692

(FDCPA), include recovery of monetary damages. We hold that a property owner may recover damages in this circumstance, depending upon the specific facts of the case.

Doug Walker appeals a trial court order granting the CR 12(c) dismissal motion of Quality Loan Service Corporation of Washington (Quality) and Select Portfolio Servicing Inc. (Select).[1] After Quality initiated nonjudicial proceedings to foreclose Walker's deed of trust, he sued to enjoin the trustee's sale and also sought damages for violations of the DTA, CPA, and FDCPA. Additionally, Walker sought to quiet title to his property. Because Walker's amended complaint alleges facts that, if proved, would entitle him to some relief, we reverse in part and remand for further proceedings.

## FACTS

In February 2007, Credit Suisse Financial Corporation (Credit Suisse) loaned Doug Walker $280,000. He signed a promissory note memorializing his debt and a deed of trust to secure the note. The deed of trust named Ticor Title Company as the trustee, Credit Suisse as the lender, and Mortgage Electronic Registration Systems Inc. (MERS) as "a separate corporation that is acting solely

---

[1] The trial court entered an order of default against defendants Credit Suisse Financial Corporation, Ticor Title Company, and American Brokers Conduit.

as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."

The deed of trust also contained a number of other statements about MERS's status, including,

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property.

and

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.

Walker defaulted on the note. On May 22, 2009, a notice of default was mailed to Walker.[2] On May 28, 2009, Select, acting as "the Beneficiary," recorded an instrument naming Quality as successor trustee under the deed of trust. Over a month later, on July 6, 2009, MERS executed a corporate

---

[2] The record does not contain a copy of this notice, and it is unclear from the record which party mailed the notice to Walker.

-3-

assignment of deed of trust "as nominee for Credit Suisse," assigning its interest in the deed of trust and the promissory note to Select.

On July 21, 2009, Quality recorded a notice of trustee's sale for Walker's property. The notice recited that Walker granted the deed of trust to "secure an obligation in favor of [MERS], as Beneficiary, the beneficial interest in which was assigned by [MERS], as nominee for [Credit Suisse] to [Select]." It also identified Quality as the successor trustee.

On October 28, 2009, Walker filed an amended complaint in Snohomish County Superior Court, seeking to enjoin the trustee's sale, to recover damages on a variety of theories, and to quiet title. The trial court entered a temporary restraining order enjoining the trustee's sale while the action was pending, conditioned on Walker making note payments into the court registry.

Later, the trial court granted Quality and Select's CR 12(c) motion for judgment on the pleadings. Walker appeals.

## STANDARD OF REVIEW

We review de novo a trial court's order for judgment on the pleadings.[3] "'[W]e examine the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint, which would entitle the claimant to

---

[3] Pasado's Safe Haven v. State, 162 Wn. App. 746, 752, 259 P.3d 280 (2011) (citing N. Coast Enters., Inc. v. Factoria P'ship, 94 Wn. App. 855, 858, 974 P.2d 1257 (1999)).

relief.'"[4] In making this determination, we presume the plaintiff's allegations are true and may consider hypothetical facts not included in the record.[5]

ANALYSIS

Walker alleges that Quality and Select violated the DTA, FDCPA, and CPA. He also asserts a claim to quiet title to his property. We reverse the trial court's order dismissing his complaint and remand for further proceedings on all claims except his request to quiet title.

Deeds of Trust Act

We first consider Walker's DTA claim, based primarily upon the designation of MERS as beneficiary in the deed of trust. Asserting that MERS could not be a lawful deed of trust beneficiary, Walker alleges "all subsequent actions taken by any party in reliance on MERS' actions is [sic] also unlawful." Stated more plainly, Walker claims that MERS was not a lawful beneficiary and therefore lacked the authority to assign the deed of trust and note to Select. Because the assignment to Select was ineffective, Select's designation of Quality as successor trustee was also ineffective, meaning that Quality lacked authority to initiate nonjudicial foreclosure proceedings. Although no foreclosure sale

---

[4] Pasado's Safe Haven, 162 Wn. App. at 752 (quoting N. Coast Enters., 94 Wn. App. at 859).

[5] M.H. v. Corp. of Catholic Archbishop of Seattle, 162 Wn. App. 183, 189, 252 P.3d 914 (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)), review denied, 173 Wn.2d 1006 (2011).

occurred, Walker labels this a "wrongful foreclosure" claim. We consider it more accurate to characterize this as a claim for damages arising from DTA violations.

Select and Quality respond that Washington does not recognize a claim for "wrongful initiation of foreclosure when, as here, the foreclosure sale has been discontinued." We disagree.

The DTA regulates transactions in which a borrower secures a promissory note or other debt instrument with a deed of trust. Although a statutory deed of trust conveys title to a trustee, because the borrower does this to secure credit or a loan from the lender, it is essentially an equitable mortgage.[6] The beneficiary is "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation."[7] The trustee is "the person designated as the trustee in the deed of trust or appointed under RCW 61.24.010(2)."[8] Former RCW 61.24.010(2) (2008) states,

> The trustee may resign at its own election or be replaced by the beneficiary . . . . [U]pon the resignation, . . . or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Upon recording the appointment of a successor trustee . . . , the successor trustee shall be vested with all powers of an original trustee.

---

[6] 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.3, at 260 (2d ed. 2004).

[7] RCW 61.24.005(2).

[8] Former RCW 61.24.005(4) (1998).

Under the DTA, if a deed of trust contains the power of sale, the trustee may usually foreclose the deed of trust and sell the property without judicial supervision.[9] Only a lawful beneficiary has the power to appoint a successor trustee,[10] and only a lawfully appointed successor trustee has the authority to issue a notice of trustee's sale.[11] Accordingly, when an unlawful beneficiary appoints a successor trustee, the putative trustee lacks the legal authority to record and serve a notice of trustee's sale.

While the current version of RCW 61.24.030 requires that the trustee "have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust" before issuing a notice of trustee's sale,[12] the version in effect on July 21, 2009, when Quality filed a notice of trustee's sale regarding Walker's property, did not include this requirement.[13]

Because the DTA "dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor."[14]

---

[9] Bain, 175 Wn.2d at 93 (citing 18 STOEBUCK & WEAVER, § 17.3, at 260-61); RCW 61.24.020; RCW 61.12.090; RCW 7.28.230(1).

[10] Bain, 175 Wn.2d at 89; former RCW 61.24.010(2).

[11] Former RCW 61.24.010(2), .040 (2008).

[12] RCW 61.24.030(7)(a).

[13] See former RCW 61.24.030 (2008).

[14] Albice v. Premier Mortg. Servs. of Wash, Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012) (citing Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007)).

The Washington Supreme Court "has frequently emphasized that the deed of trust act 'must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales.'"[15] Courts also construe the DTA to further three objectives: "'First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.'"[16]

The DTA permits a borrower or grantor, among others, "to restrain, on any proper legal or equitable ground, a trustee's sale."[17] But, as Walker correctly observes, the DTA includes "no specific remedies for violation of the statute in the context of pre-sale actions meant to prevent the wrongful foreclosure from occurring." However, in response to a decision of this court,[18] in 2009 the legislature explicitly recognized a cause of action for damages for failure to comply with the DTA.[19] It did so by amending the DTA to include RCW

---

[15] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 789, 295 P.3d 1179 (2013) (emphasis added) (quoting Udall, 159 Wn.2d at 915-16).
[16] Bain, 175 Wn.2d at 94 (quoting Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).
[17] RCW 61.24.130(1).
[18] Brown v. Household Realty Corp., 146 Wn. App. 157, 189 P.3d 233 (2008); see FINAL B. REP. on Engrossed S.B. 5810, at 3, 61st Leg., Reg. Sess. (Wash. 2009); JUDICIARY COMM., H.B. ANALYSIS on Engrossed S.B. 5810, at 2-3, 61st Leg., Reg. Sess. (Wash. 2009).
[19] RCW 61.24.127; LAWS OF 2009, ch. 292, § 6.

61.24.127, which provides that a borrower or grantor does not waive certain claims for damages by failing to bring a civil action to enjoin a foreclosure sale. The claims not waived include the "[f]ailure of the trustee to materially comply with the provisions of this chapter."[20] Nothing in the 2009 amendment requires that the violation resulted in the wrongful sale of the property. This provision preserves a cause of action existing at the time a sale could be restrained—in other words, a claim existing before a foreclosure sale. It reflects the legislature's understanding of existing law—that a cause of action for damages existed based upon a trustee's presale failure to comply with the DTA, causing damage to the borrower.

Klem v. Washington Mutual Bank[21] supports our conclusion that the specific remedies provided in the DTA are not exclusive. There, the court considered whether the violations of the DTA that the legislature identified in RCW 61.24.135 as unfair or deceptive acts for purposes of the CPA were the only DTA violations that were unfair for CPA purposes. The Klem court held that the legislature's list was not exclusive, observing, "Given that there is 'no limit to human inventiveness,' courts, as well as legislatures, must be able to determine

---

[20] RCW 61.24.127(1)(c).
[21] 176 Wn.2d 771, 295 P.3d 1179 (2013).

-9-

whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA."[22]

Walker alleges that MERS never held his note and, therefore, never had authority to act as beneficiary under the DTA. He further alleges that Select derived its authority to act from MERS's assignment and Quality derived its authority to foreclose from Select. Thus, he argues that Select had no authority to proceed with a nonjudicial foreclosure and violated the DTA by starting one. He also claims that Select violated the DTA by appointing Quality as successor trustee and by recording an appointment before MERS purported to assign his note to Select. For purposes of this appeal, we must accept Walker's factual allegations as true. If proved, these allegations would establish material violations of the DTA.

In Bain v. Metropolitan Mortgage Group, Inc.,[23] our Supreme Court held that if MERS never held the promissory note or other debt instrument, it was not a lawful beneficiary and could not appoint a successor trustee. The court also found deed of trust language identifying MERS as "acting solely as a nominee for Lender and Lender's successors and assigns" insufficient to establish MERS as the note holder's agent.[24] The Supreme Court in Bain also rejected the argument

---

[22] Klem, 176 Wn.2d at 785-86.
[23] 175 Wn.2d 83, 110, 285 P.3d 34 (2012).
[24] Bain, 175 Wn.2d at 106-07.

that MERS could become a beneficiary by contract, explaining, "The legislature has set forth in great detail how nonjudicial foreclosures may proceed. We find no indication the legislature intended to allow the parties to vary these procedures by contract. We will not allow waiver of statutory protections lightly."[25] Thus, Walker has pleaded facts sufficient to show that MERS lacked the authority to assign his deed of trust and note to Select and, as a consequence, that Select similarly lacked authority to appoint Quality successor trustee. Additionally, Walker alleges Select did not hold the note before MERS purportedly appointed Select as the beneficiary in July 2009. As such, Select lacked authority to appoint Quality when it signed the appointment of successor trustee in May 2009. Thus, Walker pleads facts sufficient to show that Quality and Select violated RCW 61.24.005(2) and former RCW 61.24.010(2) because Select was not a lawful beneficiary at the time it appointed Quality. Walker also pleads facts sufficient to establish a violation of former RCW 61.24.040 because he alleges that an unlawful trustee recorded and transmitted the notice of sale.

In addition to these procedural violations, Walker alleges that Quality breached its statutory duty of good faith to him imposed by the DTA.[26] He contends, "If [Quality] intends to foreclose a property non-judicially it is obligated to have evidence that it is doing so on a legitimate and legal basis and not simply

[25] Bain, 175 Wn.2d at 108.
[26] RCW 61.24.010(4).

-11-

acting at the behest of a party that may or may not have the legal right to conduct such an action." He asserts that a "cursory investigation" would have revealed that Quality did not have proper authority to act and that Quality "recorded and relied upon documents it knew, or should have known, to be false and misleading." These allegations, if proved, would show that Quality failed to act in good faith by failing to adequately inform itself about its authority to foreclose. Therefore, Walker pleads facts entitling him to relief for Quality's violations of its duties under RCW 61.24.010(4).

We recognize our disagreement with Vawter v. Quality Loan Service Corp. of Washington,[27] where the United States District Court for the Western District of Washington reached a contrary result, holding that "the DTA does not authorize a cause of action for damages for the wrongful institution of nonjudicial foreclosure proceedings where no trustee's sale occurs." To reach this conclusion, the court relied upon Pfau v. Washington Mutual, Inc.[28] and Krienke v. Chase Home Finance, LLC,[29] which were decided before the legislature enacted RCW 61.24.127. Further, the court decided Vawter before our Supreme Court decided Bain. We also disagree with the reasons that the court identified to support its decision.

---

[27] 707 F. Supp. 2d 1115, 1123 (W.D. Wash 2010).
[28] No. CV-08-00142, 2009 WL 484448 (E.D. Wash. Feb. 24, 2009).
[29] Noted at 140 Wn. App. 1032 (2007).

The court in <u>Vawter</u> stated four reasons for its holding. First, it explained, "The Vawters have not identified any statutory provision of the DTA that permits a cause of action for wrongful institution of foreclosure proceedings."[30] The court did not address the effect of the 2009 amendments to RCW 61.24.127 because the savings clause did not apply in the case before it.[31] But, construing RCW 61.24.127(1)(c) in a borrower's favor, this statute demonstrates that the legislature recognized a cause of action for damages for DTA violations. As previously noted, nothing in the statute requires that the violation resulted in the wrongful sale of the property.

Second, the court in <u>Vawter</u> explained that the legislature "established a comprehensive scheme for the nonjudicial foreclosure process" and that "to the extent the legislature intended to permit a cause of action for damages, it could have said so."[32] But, the legislature has spoken and, with RCW 61.24.127(1)(c), recognized a cause of action for damages caused by violations of the DTA.

---

[30] <u>Vawter</u>, 707 F. Supp. 2d at 1123.
[31] Although the court recognized that "the Washington legislature amended the DTA to add a handful of new protections and safeguards for borrowers and grantors," the homeowners acknowledged that the amendments did not govern the nonjudicial foreclosure proceedings at issue in their case. Accordingly, the court determined that it "need not consider the effect of these amendments for purposes of the present motion." <u>Vawter</u>, 707 F. Supp. 2d at 1122 n.9.
[32] <u>Vawter</u>, 707 F. Supp. 2d at 1123.

Third, the court reasoned that allowing a presale cause of action for damages would "spawn litigation under the DTA for damages, thereby interfering with the efficient and inexpensive nature of the nonjudicial foreclosure process, while at the same time failing to address directly the propriety of foreclosure or advancing the opportunity of interested parties to prevent wrongful foreclosure."[33] Bain observed that the lending industry has institutionalized a series of deceptive practices,[34] that MERS has been involved with "an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide,"[35] and that MERS "often issue[s] assignments without verifying the underlying information."[36] Thus, the lending industry and MERS have already spawned the feared litigation with their institutionalized practices. Holding the lending industry liable for damages caused by its DTA violations should produce greater compliance and a reduction in future litigation. Thus, the availability of a presale cause of action for damages could significantly reduce the long-term system-wide expenses of nonjudicial foreclosures under the DTA.

Finally, the court in Vawter stated that even if it were to recognize a presale cause of action for damages under the DTA, "the court is not persuaded

---

[33] Vawter, 707 F. Supp. 2d at 1124.
[34] Bain, 175 Wn.2d at 117.
[35] Bain, 175 Wn.2d at 118.
[36] Bain, 175 Wn.2d at 118 n.18.

that it could be maintained without a showing of prejudice."[37] There, the plaintiffs could not show prejudice because they conceded that the trustee's sale was discontinued and that one of the defendants possessed the note.[38] Additionally, the court determined that prematurely appointing a successor trustee, before authority to make such an appointment, was a "non-prejudicial timing mistake" because the trustee reappointed the successor after it was assigned a beneficial interest in the deed of trust.[39] Further, pre-Bain, the court explained, "Even accepting the Vawters' factual allegation that MERS exists to maintain records regarding the ownership of mortgages, this does not mean that MERS cannot hold a beneficial interest under the Deed of Trust."[40]

Here, Walker alleges that MERS never had a beneficial interest because it never held the note. Under Bain, it could never be a lawful beneficiary. Walker also alleges damages caused by Select's and Quality's unlawful actions taken in violation of the DTA. Walker's allegations strongly support recognizing a presale cause of action for damages under the DTA because he pleads facts showing he has suffered prejudice from Select's and Quality's unlawful conduct.

---

[37] Vawter, 707 F. Supp. 2d at 1124.
[38] Vawter, 707 F. Supp. 2d at 1122-23, 1124.
[39] Vawter, 707 F. Supp. 2d at 1127.
[40] Vawter, 707 F. Supp. 2d at 1126.

Quality and Select cite Massey v. BAC Home Loans Servicing LP[41] to support their argument that there is "no cause of action for damages for violation of the DTA where the trustee's sale is discontinued." But, in Massey, as in Vawter, the court followed Pfau and Krienke and did not consider the 2009 amendments to the DTA.[42]

MERS never held the note and, based on Walker's amended complaint, we can hypothesize that MERS never had independent authority to appoint a beneficiary. We can further hypothesize that Select did not hold Walker's note at the time it appointed Quality. No Washington case law relieves from liability a party causing damage by purporting to act under the DTA without lawful authority to act or failing to comply with the DTA's requirements.

Notably, the language of RCW 61.24.127(1)(c) refers only to "[f]ailure of the trustee to materially comply with the provisions of this chapter." (Emphasis added.) We need not decide if this may prevent a borrower from suing a beneficiary under some circumstances. Our Supreme Court has recognized, in the context of a CPA claim, "Where the beneficiary so controls the trustee so as to make the trustee a mere agent of the beneficiary, then as principle [sic], the

---

[41] No. C12-1314, 2012 WL 5295146 (W.D. Wash. Oct. 26, 2012).
[42] Massey, 2012 WL 5295146, at *4.

beneficiary may be liable for the acts of its agent."[43] Here, we can plausibly hypothesize Select controlling Quality's actions violating the DTA.

Because the legislature recognized a presale cause of action for damages in RCW 61.24.127(1)(c), we hold that a borrower has an actionable claim against a trustee who, by acting without lawful authority or in material violation of the DTA, injures the borrower, even if no foreclosure sale occurred. Additionally, where a beneficiary, lawful or otherwise, so controls the trustee so as to make the trustee a mere agent of the beneficiary, then, as principal, it may have vicarious liability.

## Fair Debt Collection Practices Act

Walker also asserts that Quality and Select violated the FDCPA. He alleges that Select meets the "debt collector" definition of 15 U.S.C. § 1692a(6)(F)(iii) because he defaulted on his debt before MERS purported to assign it to Select. Additionally, "if SELECT was a 'debt collector' within the terms of the FDCPA at the time of its assignment of the debt, its agent, [Quality], would certainly be one." Walker argues that Quality violated 15 U.S.C. § 1692e "through the use of false and misleading representations" and violated 15 U.S.C. § 1692f with a "threat to take nonjudicial action to dispossess the Plaintiff of his residence without a present right to possession." He claims

---

[43] Klem, 176 Wn.2d at 791 n.12.

that Select violated these provisions of the FDCPA with its "representations" and "actions" "made in connection with the purported collection of a debt," as well as its "misstatements of fact regarding a debt owed to SELECT."

The FDCPA "applies only to 'debt collectors,' which are entities who regularly collect debts for others, not to 'creditors,' who are collecting on their own behalf."[44] The statute defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.[45]

A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."[46]

---

[44] Am. Express Centurion Bank v. Stratman, 172 Wn. App. 667, 676, 292 P.3d 128 (2012) (citing 15 U.S.C. § 1692a(6); Discover Bank v. Ray, 139 Wn. App. 723, 727, 162 P.3d 1131 (2007)).
[45] 15 U.S.C. § 1692a(6).
[46] 15 U.S.C. § 1692a(5).

Section 1692e of the FDCPA prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." A debt collector violates that section by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest."[47]

Here, Quality makes no claim that it is a creditor collecting on its own behalf. Instead, Quality argues that it is not a statutory debt collector because it does not regularly collect consumer debts owed to another. Quality also states that pursuing nonjudicial foreclosure under a deed of trust does not constitute debt collection.

"'[M]ortgage servicer companies and others who service outstanding debts for others, [are not debt collectors] so long as the debts were not in default when taken for servicing.'"[48] Thus, "'[a]lthough there is no statutory definition of 'loan servicer' under the Act, a loan servicer will become a debt collector under

---

[47] 15 U.S.C. § 1692f(6)(A).
[48] Oliver v. Ocwen Loan Servs., LLC, No. C12-5374, 2013 WL 210619, at *3 (W.D. Wash. Jan. 18, 2013) (second alteration in original) (quoting Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009)).

§ 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired.'"[49]

In Jara v. Aurora Loan Services, LLC,[50] the United States District Court for the Northern District of California recognized that most district courts within the Ninth Circuit Court of Appeals have concluded that foreclosure proceedings do not constitute "debt collection" within the meaning of the FDCPA. The court noted, however, that "acts taken in furtherance of a foreclosure proceeding can be the basis of a FDCPA claim, but only if they are alleged as violations of 15 U.S.C. § 1692f(6)."[51] The court adopted the District of Idaho's reasoning:

> [I]f "debt collection" generally included the enforcement of a security interest, the language specifying so for the purposes of § 1692f(6) would be surplusage, and such a construction would violate a "long standing canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous."[52]

Although the Ninth Circuit has not ruled on this issue, "[t]he current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only

---

[49] Oliver, 2013 WL 210619, at *4 (quoting Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 360 n.4 (6th Cir. 2012)).

[50] No. C 11-00419, 2011 WL 6217308, at *4 (N.D. Cal. Dec. 14, 2011).

[51] Jara, 2011 WL 6217308, at *5.

[52] Jara, 2011 WL 6217308, at *5 (quoting Armacost v. HSBC Bank USA, No. 10-CV-274, 2011 WL 825151, at *5 (D. Idaho Feb. 9, 2011)).

§ 1692f(6) of the FDCPA applies."[53] We join this trend in recognizing a claim under § 1692f, which is consistent with the statutory language.

Here, the trial court properly dismissed Walker's claims under 15 U.S.C. § 1692e. Nothing in the record indicates that Quality or Select engaged in any activities beyond those necessary to institute foreclosure proceedings. "Acts required to institute foreclosure proceedings, such as the recording of a notice of default, alone, are not debt collection activities for purposes of the FDCPA unless alleged in relation to a claim for violation of 15 U.S.C. § 1692f(6)."[54] Therefore, Walker's claim under 15 U.S.C. § 1692e fails.

The trial court erred, however, by dismissing Walker's claim under 15 U.S.C. § 1692f. Because his arguments concern Quality's and Select's actions to enforce a security interest, these parties may constitute "debt collectors" within the statute's meaning. Assuming that Walker's allegations are true, neither Quality nor Select had a present right to possess the property through nonjudicial foreclosure because they never held the note or the underlying debt and were not lawfully appointed under the DTA. If Walker is able to prove these underlying DTA violations, he may also be able to show that Quality and Select violated § 1692f(6) by threatening nonjudicial foreclosure.

---

[53] McDonald v. OneWest Bank, FSB, No. C10-1952, 2012 WL 555147, at *4 n.6 (W.D. Wash. Feb. 21, 2012).
[54] Jara, 2011 WL 6217308, at *5.

Presuming that the facts stated in Walker's amended complaint are true, the trial court could potentially grant relief under 15 U.S.C. § 1692f. Accordingly, the trial court erred by dismissing his FDCPA claim.

Consumer Protection Act

Walker next claims that Quality and Select violated the CPA. The CPA declares unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.[55] Generally, to prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.[56] The failure to establish any of these elements is fatal to a CPA claim.[57] Here, in light of our Supreme Court's recent decisions in Bain[58] and Klem,[59] Quality and Select contend only that Walker fails to meet the fourth and fifth elements.

---

[55] RCW 19.86.020.

[56] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

[57] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

[58] In Bain, a case against MERS, the court recognized that the plaintiff presumptively met the first element because "characterizing MERS as the beneficiary has the capacity to deceive." 175 Wn.2d at 117. The plaintiff also presumptively met the second element based upon "considerable evidence that MERS is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide." 175 Wn.2d at 118. Third, the court opined that "there certainly could be injury under the CPA" if the homeowner borrower could not determine the noteholder, if there were incorrect or fraudulent transfers of the note, or if concealing loan transfers deprived the

The CPA does not define an "unfair or deceptive act or practice." Whether an alleged act is unfair or deceptive presents a question of law.[60] A consumer may establish an unfair or deceptive act by showing "either that an act or practice 'has a capacity to deceive a substantial portion of the public,' or that 'the alleged act constitutes a per se unfair trade practice.'"[61] "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance."[62] Whether an unfair act has the capacity to deceive a substantial portion of the public is a question of fact.[63] To establish a per se violation, a plaintiff must show "that a statute has been violated which contains a specific legislative declaration of public interest impact."[64]

---

homeowner of rights that require the homeowner to sue or to negotiate with the actual noteholder. 175 Wn.2d at 118-19.

[59] In Klem, the court held that "a claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." 176 Wn.2d at 787. The court determined that a trustee's failure to fulfill its duty to the borrower constituted a "deceptive act" under the CPA. 176 Wn.2d at 787.

[60] Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).

[61] Saunders v. Lloyd's of London, 113 Wn.2d 330, 344, 779 P.2d 249 (1989) (quoting Hangman Ridge, 105 Wn.2d at 785-86).

[62] Holiday Resort, 134 Wn. App. at 226.

[63] Holiday Resort, 134 Wn. App. at 226-27.

[64] Hangman Ridge, 105 Wn.2d at 791.

Walker asserts that his allegations describe a per se violation of the CPA, thereby satisfying the first two elements,[65] because Quality and Select violated "statutes related to the collection of a debt."[66] Alternatively, Walker lists four acts that he contends were deceptive: (1) Quality sent a notice of default to Walker "despite not meeting the requirements of a successor trustee under RCW 61.24.010(2) which [Quality] and SELECT knew or should have known at the time the Notice of Default was issued"; (2) Quality and Select "facilitated a deceptive and misleading effort to wrongfully execute and record documents [Quality] and SELECT knew or should have known contained false statements related to the Appointment of Successor Trustee and Assignment of Deed of Trust"; (3) Quality and Select sent, executed, and recorded a notice of trustee's sale that they "knew contained false statements in that no obligation of the Plaintiff was ever owed to SELECT, the purported 'beneficiary'"; and (4) "that as a result of this conduct, [Quality] and SELECT knew that its conduct amounted to wrongful foreclosure and was further in violation of the FDCPA."

To meet the fourth and fifth elements, Walker must allege facts demonstrating that Quality's and Select's deceptive acts caused him harm. To

---

[65] Hangman Ridge, 105 Wn.2d at 786.

[66] See Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 53, 204 P.3d 885 (2009) ("When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA . . . under state and federal law, reflecting the public policy significance of this industry.").

prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."[67]

Walker alleges as his injuries "the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions" and "the necessity for investigation and consulting with professionals to address Respondents' wrongful foreclosure and collection practices and violation of RCW 61.24, et seq." Additionally, he "had to take time off from work and incurred travel expenses to consult with an attorney to address the misconduct of the Defendants."

In Panag v. Farmers Insurance Co. of Washington,[68] our Supreme Court held, "[T]he injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA.[69]

Walker also alleges that but for Quality's and Select's deceptive acts, he would not have suffered these same injuries. Walker asserts that the deceptive documents induced him to incur expenses to investigate whether Select and

---

[67] Indoor Billboard, 162 Wn.2d at 84.
[68] 166 Wn.2d 27, 57, 204 P.3d 885 (2009) (quoting Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990)).
[69] See Panag, 166 Wn.2d at 62.

Quality had authority to act against him and to address their allegedly improper deceptive acts. Thus, he pleads facts sufficient to establish causation. Because Walker pleads facts that, if proved, could satisfy all five elements, we conclude that the trial court erred by dismissing his CPA claim.

Quiet Title

Finally, Walker claims that the court erred by dismissing his action to quiet title to his property. He alleges, "As MERS was never a legitimate beneficiary under RCW 61.24.005 and the interest in the Deed of Trust has been effectively segregated from the interest in the Note, the Deed of Trust is no longer a valid lien upon Mr. Walker's property."

To support his argument, Walker cites the Restatement (Third) of Property: Mortgages, which states, in a comment, that "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation."[70] He also cites numerous cases outside this jurisdiction for the notion that "the segregation of the Note from the Deed of Trust through the assignment of the Deed of Trust from MERS to SELECT without a valid assignment of the Note renders the subject Deed of Trust a nullity and an improper lien against Mr. Walker's property." He requests that the court clear the "improper cloud" on his

---

[70] RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 5.4 cmt. e (1997).

property and quiet his title, although he cites no authority recognizing such a cause of action based upon the facts in this case.

In response, Quality and Select assert that Walker has not alleged any facts demonstrating that he holds title superior to the deed of trust. They also claim that he must allege payment of his loan to sufficiently plead a claim to quiet title. For this proposition they cite Evans v. BAC Home Loans Servicing LP,[71] holding that a plaintiff seeking to quiet title against a purported lender or other holder of a debt secured by a deed of trust must allege satisfaction of the secured obligation.

> The logic of such a rule is overwhelming. Under a deed of trust, a borrower's lender is entitled to invoke a power of sale if the borrower defaults on its loan obligations. As a result, the borrower's right to the subject property is contingent upon the borrower's satisfaction of loan obligations. Under these circumstances, it would be unreasonable to allow a borrower to bring an action to quiet title against its lender without alleging satisfaction of those loan obligations. Plaintiffs have not provided any rationale that would support an alternate rule.[72]

An action to quiet title is an equitable proceeding "designed to resolve competing claims of ownership."[73] RCW 7.28.010 requires Walker to bring an action to quiet title against "the person claiming the title or some interest" in real property in which he has a valid interest. "A 'plaintiff in an action to quiet title

---

[71] No. C10-0656, 2010 WL 5138394 (W.D. Wash. 2010).
[72] Evans, 2010 WL 5138394, at *4.
[73] Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001).

must prevail, if he prevails at all, on the strength of his own title, and not on the weakness of the title of his adversary.'"[74]

In <u>Bain</u>, the Supreme Court declined to decide the legal effect of MERS acting as an unlawful beneficiary under the DTA. However, the court stated its inclination to agree with MERS's assertion that any violation of the DTA "'should not result in a void deed of trust, both legally and from a public policy standpoint.'"[75] The court also noted, "[I]f in fact MERS is not the beneficiary, then the equities of the situation would likely (though not necessarily in every case) require the court to deem that the real beneficiary is the lender whose interests were secured by the deed of trust or that lender's successors."[76] While dicta, these statements identify critical problems with Walker's argument.

Here Walker does not allege a claim to quiet title based upon the strength of his own title. Instead, he asks the court to void a consensual lien against his property because of a defect in the instrument creating that lien, the designation of an ineligible entity as beneficiary of the deed of trust. As previously noted, he cites no authority recognizing this defect as a basis to void a deed of trust and offers no equitable reason why a court should recognize his claim. As a matter of

---

[74] <u>Wash. State Grange v. Brandt</u>, 136 Wn. App. 138, 153, 148 P.3d 1069 (2006) (quoting <u>City of Centralia v. Miller</u>, 31 Wn.2d 417, 422, 197 P.2d 244 (1948)).
[75] <u>Bain</u>, 175 Wn.2d at 114.
[76] <u>Bain</u>, 175 Wn.2d at 111.

first impression, we decline to do so. We reject the argument that this defect in a deed of trust, standing alone, renders it void and note that Washington courts have repeatedly enforced between the parties a deed or mortgage that failed to comply with the statutory requirement of an acknowledgement.[77] The trial court properly dismissed Walker's action to quiet title.

Attorney Fees

Walker requests costs and reasonable attorney fees incurred on this appeal under RAP 18.1 and the deed of trust. RAP 18.1 permits a prevailing party to recover fees incurred on appeal if the party can recover such fees at trial.[78] "A party must prevail on the merits before being considered a prevailing party."[79] Because Walker, at least at this point, does not prevail on the merits, he is not entitled to costs and attorney fees incurred on appeal.

CONCLUSION

Because Walker alleges facts that, if proved, would entitle him to relief, we reverse the trial court's order dismissing his claims under CR 12(c) for violations

---

[77] Bremner v. Shafer, 181 Wash. 376, 384, 43 P.2d 27 (1935).
[78] Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001).
[79] Ryan v. Dep't of Soc. & Health Servs., 171 Wn. App. 454, 476, 287 P.3d 629 (2012).

of the DTA, the FDCPA, and the CPA and remand for further proceedings consistent with this opinion. We affirm the court's dismissal of his action to quiet title.

_Leach, C. J._

WE CONCUR:

_Dwyer, J_                    _Cox, J._