IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NEIL KIKUCHI and MARIE KIKUCHI, | No. 79899-5-I |
| Appellants, | DIVISION ONE |
| v. | |
| WEINSTEIN & RILEY, P.S.; BANK OF NEW YORK MELLON CORPORATION fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2005-26CB, Mortgage Pass-Through Certificates, Series 2005-26CB; SHELLPOINT MORTGAGE SERVICING; NEW PENN FINANCIAL, LLC; BANK OF AMERICA, N.A.; and Doe Defendants 1 through 20, | UNPUBLISHED OPINION |
| Respondents. | |

BOWMAN, J. — Neil and Marie Kikuchi appeal from the summary judgment dismissal of their Consumer Protection Act (CPA), chapter 19.86 RCW, lawsuit arising from a nonjudicial foreclosure proceeding initiated against their home. They also challenge the basis and reasonableness of the attorney fee award entered against them. Because the Kikuchis did not meet their burden to show any genuine issue of material fact and the fee award was proper, we affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Neil Kikuchi bought the property at issue in 1985.  On March 9, 2005, the Kikuchis borrowed $200,000 from Benchmark Lending Group to refinance the property.  They signed a promissory note and deed of trust identifying First American Title as the trustee, Benchmark as the lender, and Mortgage Electronic Registration Systems Inc. (MERS) as the beneficiary.  The deed of trust describes MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  The note was endorsed to Countrywide Document Custody Services, then to Countrywide Home Loans Inc., and then endorsed in blank.

In May 2005, the loan was sold to the Bank of New York (BONY).[1]  BONY was the actual holder of the note.

In the late 2000s, Neil engaged in criminal conduct involving his employer. In July 2007, a judge sentenced Neil to serve 17 months in federal prison and ordered him to pay $845,603.48 in restitution.  In 2008, while Neil was incarcerated, Marie filed for Chapter 7 bankruptcy and was granted a discharge under 11 U.S.C. § 727.  Neil also filed for bankruptcy but the court denied confirmation of his Chapter 13 plan and dismissed the case.

On December 12, 2009, the Kikuchis entered into a loan modification with Bank of America N.A., the loan servicer for BONY.  The addendum provided for

---

[1] The entity's full legal title is "Bank of New York Mellon Corporation fka the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2005-26CB, Mortgage Pass-Through Certificates, Series 2005-26CB."

scheduled increases in the interest rate and monthly payments. The Kikuchis admit that they stopped making payments on the loan in 2011.

On July 13, 2011, MERS recorded an "Assignment of Deed of Trust," assigning its beneficial interest in the deed of trust to BONY. On May 18, 2012, BONY granted Bank of America a two-year power of attorney for the limited purpose of taking action on its behalf regarding foreclosure actions. This limited power of attorney was recorded in King County on April 22, 2013.

On September 19, 2012, the law firm of Bishop, Marshall & Weibel P.S. (Bishop) received a foreclosure referral from Bank of America for the Kikuchi property. The referral indicated that Bishop should bring the foreclosure on behalf of BONY.

On November 19, 2012, Bishop issued a "Notice of Default" to the Kikuchis. Attached to the Notice of Default was a copy of the foreclosure loss mitigation declaration executed by Bank of America on behalf of BONY.

On November 28, 2012, BONY executed an "Appointment of Successor Trustee," appointing Bishop to serve in that role. An officer of the Bank of America made the representation under oath.

On March 5, 2014, BONY granted New Penn Financial LLC dba Shellpoint Mortgage Servicing (Shellpoint) a two-year limited power of attorney. The limited power of attorney was recorded in King County on January 5, 2015.

On November 24, 2014, Bank of America notified the Kikuchis that the servicing of their loan would transfer to Shellpoint on December 16, 2014. On April 10, 2015, Shellpoint executed a beneficiary declaration stating that at all

3

times on and after May 26, 2005, BONY has been the beneficiary of the deed of trust and actual holder of the note.

In May 2015, attorney William Bishop moved from the Bishop law firm to the law firm of Weinstein & Riley P.S. (Weinstein). He brought the Kikuchi file with him.

On December 16, 2015, BONY issued a second two-year limited power of attorney to Shellpoint. On June 24, 2016, Shellpoint executed an Appointment of Successor Trustee, appointing Weinstein as successor trustee. On the same day, Weinstein sent a "Notice of Trustee's Sale" to the Kikuchis.

On October 19, 2016, the Kikuchis filed this lawsuit against Weinstein, BONY, Shellpoint, and Bank of America alleging violation of the CPA and seeking an injunction and damages. They amended their complaint two days later, asserting essentially the same claims. On October 26, 2016, the Kikuchis obtained a temporary restraining order staying the foreclosure sale. The court granted preliminary injunction on December 16, 2016.

In 2018, BONY, Shellpoint, and Bank of America jointly moved for summary judgment and Weinstein separately moved for summary judgment. In support of summary judgment, the defendants submitted documentary evidence on the loan as well as the deposition of Neil and declarations from Weinstein, Shellpoint, and Bank of America. The trial court granted summary judgment dismissal of the Kikuchis' claims against all defendants. On March 21, 2019, the court entered an order and judgment awarding BONY $58,083.82 in attorney

fees and costs. The court denied the Kikuchis' motion for reconsideration of the attorney fee award. The Kikuchis appeal.

ANALYSIS

Summary Judgment

The Kikuchis contend that genuine issues of material fact preclude summary judgment because (1) none of the documentation used to support initiation of the attempted nonjudicial foreclosure was compliant with the deeds of trust Act (DTA), chapter 61.24 RCW, (2) Bank of America lacked authority to initiate a nonjudicial foreclosure when it was not the noteholder, and (3) these errors establish a violation of the CPA.

This court reviews de novo a trial court's decision to grant summary judgment. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013). A court properly grants a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The moving party bears the initial burden of showing the absence of an issue of material fact. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986). This court may affirm summary judgment

on any basis supported by the record.  C.L. v. Dep't of Soc. & Health Servs., 200 Wn. App. 189, 198-99, 402 P.3d 346 (2017).

"Washington does not recognize an independent cause of action under the DTA seeking monetary damages for alleged DTA violations absent a completed foreclosure sale."  Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 433, 334 P.3d 529 (2014).  But a DTA violation may support a claim under the CPA under certain circumstances, regardless of whether a foreclosure sale has been completed.  Frias, 181 Wn.2d at 433.

The Kikuchis assert that the assignments of deed of trust were improperly executed in violation of the DTA and that the identity of the noteholder at all times in the foreclosure process remains open.  We disagree.

A foreclosure under the DTA generally commences with the issuance of a notice of default by the beneficiary or trustee at least 30 days prior to the recording of the notice of trustee's sale.  RCW 61.24.030(8).  The DTA defines a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust."  RCW 61.24.005(2).  A "holder" is a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  RCW 62A.1-201(b)(21)(A).  A holder need not own a note to enforce the note.  Brown v. Dep't of Commerce, 184 Wn.2d 509, 525, 359 P.3d 771 (2015).  Similarly, a loan "servicer" is not necessarily the owner, but the servicer must be a holder of the note to enforce it.  Brown, 184 Wn.2d at 523.

"[T]he holder of a note has the right to appoint a successor trustee under the Deeds of Trust Act." Bavand v. OneWest Bank, FSB, 196 Wn. App. 813, 845, 345 P.3d 233 (2016). The beneficiary has the power to appoint any trustee that is qualified to act as such pursuant to law. RCW 61.24.010(2). Only a proper beneficiary has the power to appoint a successor to the original trustee named in the deed of trust, and only a properly appointed trustee may proceed with a nonjudicial foreclosure of real property. Walker v. Quality Loan Serv. Corp. of Wash., 176 Wn. App. 294, 306, 308 P.3d 716 (2013). Thus, if an unlawful beneficiary appoints a successor trustee, that trustee lacks legal authority to carry out the foreclosure. Walker, 176 Wn. App. at 306.

"[A] party satisfies the proof of beneficiary provisions [of] RCW 61.24.030(7)(a) and RCW 61.24.163(5)(c) when it submits an undisputed declaration under penalty of perjury that it is the actual holder of the promissory note." Brown, 184 Wn.2d at 547. An agent of the beneficiary may sign the beneficiary declaration. Terhune v. N. Cascade Tr. Servs., Inc., 9 Wn. App. 2d 708, 725, 446 P.3d 683 (2019), review denied by Terhune v. U.S. Bank Trust, N.A., 195 Wn.2d 1004, 458 P.3d 782 (2020). Here, evidence in the record submitted by the defendants in support of their motion for summary judgment establishes that BONY was the holder of the note. Weinstein as appointed successor trustee submitted a declaration stating that BONY has been the holder of the note since May 2005. BONY's appointed attorney in fact, Shellpoint, submitted a declaration attesting to BONY's status as noteholder in 2005.

The Kikuchis assert that this evidence was insufficient to prove that BONY was the noteholder because the note was in the custody of Bank of America, not BONY, before it was transferred to Shellpoint in March 2015. But Bank of America's business records became Shellpoint's records upon transfer. See Discover Bank v. Bridges, 154 Wn. App. 722, 726, 226 P.3d 191 (2010). Bank of America, acting with limited power of attorney, directed the issuance of the Notice of Default that commenced the foreclosure on behalf of BONY. Bank of America took no action while servicer to begin the foreclosure. Bishop, acting as attorneys for BONY, later issued a Notice of Default to the Kikuchis. The Kikuchis have not shown a violation of the DTA.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

> To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered.

Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015). A claimant must establish all five elements to prevail. Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

> [A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest.

Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). Conduct is "deceptive" under the CPA if it misleads or misrepresents something of

material importance. <u>Walker</u>, 176 Wn. App. at 318. The causal link must show that the alleged injury would not have occurred "but for" the defendant's unlawful acts. <u>Indoor Billboard/Wash.</u>, 162 Wn.2d at 82. Whether a particular action gives rise to a CPA violation is a question of law. <u>Panag v. Farmers Ins. Co. of Wash.</u>, 166 Wn.2d 27, 47, 204 P.3d 885 (2009).

Here, the Kikuchis have not shown that a DTA violation occurred which would constitute an unfair or deceptive act under the CPA. The evidence established that BONY was the holder of the note. Moreover, it is undisputed that the Kikuchis were in default for failing to pay the loan beginning in 2011. The 2012 Notice of Default named BONY as the noteholder. In November 2014, Bank of America notified the Kikuchis that Shellpoint was becoming the new loan servicer. And on June 24, 2016, Shellpoint became BONY's successor trustee and a Notice of Trustee's Sale was recorded identifying BONY as the beneficiary. Additionally, Neil failed to identify any misrepresentation on which he relied in defaulting on the loan. Even if the Kikuchis had raised a question of material fact regarding violation of the DTA, their CPA claim would fail for lack of evidence of injury and causation. The court did not err in granting summary judgment dismissal of the CPA lawsuit.[2]

<u>Attorney Fees</u>

The Kikuchis challenge the basis and amount of the attorney fee award in favor of BONY. Whether a party is entitled to attorney fees is an issue of law

---

[2] The Kikuchis also argue that the trial court erred in providing the Kikuchis 30 days to cure the judgment prior to enforcement of the order. Because the Kikuchis failed to raise this issue below, we need not address it. RAP 2.5(a).

reviewed de novo. <u>Unifund CCR Partners v. Sunde</u>, 163 Wn. App. 473, 484, 260 P.3d 915 (2011). We review whether the amount of fees awarded was reasonable under an abuse of discretion standard. <u>Ethridge v. Hwang</u>, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). A trial judge has broad discretion in determining the reasonableness of an attorney fee award, and to reverse that award, the opponent must show that the trial court manifestly abused its discretion. <u>Ethridge</u>, 105 Wn. App. at 460; <u>Scott Fetzer Co. v. Weeks</u>, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993).

The Kikuchis first assert that the trial court erred in awarding attorney fees to BONY because Shellpoint, not BONY, was the entity that incurred litigation expenses. They contend that no authority supports granting an award of fees to a loan servicer. But the December 16, 2015 power of attorney authorized Shellpoint to act in BONY's name in "defense of the Trustee in litigation and to resolve any litigation where Shellpoint has an obligation to defend the Trustee." The note and deed of trust provide that the "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." BONY, as successor lender and holder of the note, has a right to recover reasonable attorney fees and costs in enforcing the terms of the document.

The Kikuchis' reliance on <u>Podbielansik v. LPP Mortgage Ltd.</u>, 191 Wn. App. 662, 362 P.3d 1287 (2015), is misplaced. In <u>Podbielansik</u>—a CPA action against the lender, servicer, and trustee of a loan—this court awarded attorney fees and costs on appeal to the lender pursuant to the terms of the loan.

Podbielansik, 191 Wn. App. at 673. In doing so, the court found that "[t]he request for attorney fees based on the deed is applicable only to LPP, who took the deed of trust by assignment and acquired all rights and obligations thereunder." Podbielansik, 191 Wn. App. at 673. Nothing in Podbielansik precludes an award of fees to BONY where the invoices were sent to the entity tasked with litigating the loan on BONY's behalf.

The Kikuchis next assert that the trial court

ignored obviously false time entries, duplicate and triplicate billing, billing from lawyers no[t] licensed in Washington, work on behalf of the foreclosing trustee and again, [and] no identification of work performed on behalf of BONY and/or that it paid for that work.

In determining reasonable attorney fees, the trial court must first calculate the "lodestar figure." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). This figure represents the number of hours reasonably expended (discounting hours spent on unsuccessful claims, duplicated effort, and otherwise unproductive time), multiplied by the attorney's reasonable hourly rate. Bowers, 100 Wn.2d at 597. Generally, the trial court must enter findings of fact and conclusions of law supporting its award of attorney fees because without such, the reviewing court is unable to determine whether the exercise of the trial court's discretion was manifestly unreasonable or based on untenable grounds. Brand v. Dep't of Labor & Indus., 139 Wn.2d 659, 674, 989 P.2d 1111 (1999).

Here, the court entered findings and conclusions specifying that after reviewing the case file and the parties' arguments, it determined that the fees

11

were reasonable:

> BONY's recoverable fees are reasonable given its attorneys'
> experience and area of practice, the novelty of issues and difficulty
> of questions involved, the skill requisite to perform the legal
> services properly, the fees customarily charged in this locality for
> similar legal services, and the reputation and ability of the lawyer
> performing those services.

The Kikuchis did not identify the time they allege to be false or explain why they believe the entries are improper. They have not shown that the trial court's award was an abuse of discretion.

The Kikuchis further argue that the trial court erred in entering an award of attorney fees and costs against them personally because Marie's 2008 bankruptcy provided a discharge to her personally and to the marital community. They therefore contend that BONY could obtain a judgment against only Neil's separate property. We disagree.

The Kikuchis rely on In re Castellino Villas, A. K. F. LLC, 836 F.3d 1028 (9th Cir. 2016), in support of their argument. In Castellino Villas, the Ninth Circuit held that under the "fair contemplation" test, " 'a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law.' " Castellino Villas, 836 F.3d at 1034 (quoting In re SNTL Corp., 571 F.3d 826, 839 (9th Cir. 2009)). The court then discussed the application of this test in prepetition and postpetition litigation:

> When parties engage in prepetition litigation that could lead to an
> award of attorneys' fees, they may fairly contemplate that the
> prevailing party will be awarded those fees. Therefore, a creditor's
> contingent claim to such fees is discharged in bankruptcy, even if
> some fees are incurred post-petition. But when the prepetition
> litigation is resolved in bankruptcy so that any claim (including a
> contingent claim for attorneys' fees) against the debtor would be

> discharged, we cannot say that the debtor's affirmative action to commence what amounts to "a whole new course of litigation," Siegel [v. Federal Home Loan Mortgage Corp.], 143 F.3d [525,] 534 [(9th Cir. 1998)], was in the fair contemplation of the parties when the debtor filed a bankruptcy petition. Rather, the debtor's decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition.

Castellino Villas, 836 F.3d at 1035-36.

Here, the Kikuchis signed the note and deed of trust in 2005, before Marie's 2008 bankruptcy. In 2012, after the debts were discharged, BONY attempted foreclosure as the holder of the note. The Kikuchis then initiated a new action challenging the foreclosure and alleging that BONY lacked authority to enforce the terms of their loan. BONY could not reasonably have anticipated that the Kikuchis would initiate this litigation. Therefore, under the fair contemplation test, the attorney fee award is more like a postpetition claim.

Attorney Fees on Appeal

BONY requests an award of attorney fees and costs on appeal under the attorney fee provision in the loan documents. When a contract provides for an attorney fee award, the party prevailing before this court may seek reasonable attorney fees incurred on appeal. First Citizens Bank & Trust Co. v. Harrison, 181 Wn. App. 595, 607, 326 P.3d 808 (2014); see also RAP 18.1(a). Subject to compliance with RAP 18.1, we award BONY reasonable attorney fees and costs on appeal.

Weinstein requests an award of attorney fees and costs under RAP 18.1, RAP 18.9(a), CR 11(4), and RCW 4.84.185 for defending a frivolous appeal. An

appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and is so devoid of merit that no reasonable possibility of reversal exists.  Carrillo v. City of Ocean Shores, 122 Wn. App. 592, 619, 94 P.3d 961 (2004).  We decline to award fees and costs on appeal to Weinstein on this basis.

We affirm summary judgment dismissal of the Kikuchi's CPA lawsuit and the award of attorney fees.

_____

WE CONCUR:

_____     _____