**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) <br> ) <br> ALLANA BARONI, ) <br> ) <br>             Debtor. ) <br> _____ ) <br> ) <br> ALLANA BARONI, ) <br> ) <br>    Appellant/Cross-Appellee,) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, N.A., as ) <br> Trustee for Structured ) <br> Adjustable Rate Mortgage Loan ) <br> Trust Mortgage Pass-Through ) <br> Certificates, Series 2005-17, ) <br> ) <br>    Appellee/Cross-Appellant.) <br> _____ ) | BAP Nos.  CC-16-1345-TaKuL <br>            CC-16-1383-TaKuL <br>            (Cross Appeals) <br> <br> Bk. No.   12-10986-MB <br> <br> Adv. No.  13-01071-MB <br> <br> <br> <br> <br> **MEMORANDUM**[*] |

Argued and Submitted on June 22, 2017
at Pasadena, California

Filed – July 14, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Martin R. Barash, Bankruptcy Judge, Presiding

_____

Appearances:   Richard Lawrence Antognini argued for appellant and cross-appellee Allana Baroni; Bernard Kornberg of Severson & Werson argued for appellee and cross-appellant Wells Fargo Bank, N.A.

_____

Before:  TAYLOR, KURTZ, and LAFFERTY, Bankruptcy Judges.

---

[*]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

The bankruptcy court determined that Wells Fargo Bank, N.A. ("Wells Fargo") was entitled to an award of $50,620.76 in attorneys' fees. Chapter 11[1] debtor Allana Baroni disagrees and appeals from this decision. For Wells Fargo, however, this was a short-lived victory: the bankruptcy court also determined that these attorneys' fees should be added to its allowed claim and were subject to treatment — and discharge — under Debtor's confirmed chapter 11 plan. Wells Fargo cross-appeals from this determination. We conclude that the bankruptcy court was correct in both respects; accordingly, we AFFIRM.

**FACTS[2]**

In November 2015, we affirmed the bankruptcy court's decision granting Wells Fargo summary judgment in the underlying dispute. Baroni v. Wells Fargo Bank, N.A. (In re Baroni) ("Baroni I"), BAP No. CC-14-1578-KuDTa, 2015 WL 6941625 (9th Cir. BAP Nov. 10, 2015). Where relevant, we borrow liberally from our earlier opinion's factual recitation.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

**Background facts, Debtor's bankruptcy, and the earlier appeal** In May 2005, Debtor and her husband purchased a condominium in Henderson, Nevada (the "Condo"). They executed a note and a deed of trust securing repayment of the Condo note through a first lien on the Condo. Debtor has never denied liability for repayment of the Condo note; instead, she claims that Wells Fargo is neither the holder of the Condo note nor the successor beneficiary of the Condo trust deed.

Debtor filed a voluntary chapter 13 petition in February 2012; she then converted to chapter 11. Wells Fargo timely filed a proof of secured claim.

The bankruptcy court later confirmed Debtor's second amended reorganization plan. As relevant here, Debtor's disclosure statement explained that Debtor owned rental properties, including the Condo, and that all of the first trust deed holders were partially unsecured; the plan bifurcated these claims into secured and unsecured claims. As to Wells Fargo, however, Debtor disputed that it held a claim secured by the Condo. Thus, her plan provided for payment to the holder of the Condo note and required the bankruptcy court to determine if Wells Fargo was the party entitled to this payment.

Consistent with the assertions in her plan, Debtor filed a complaint against Wells Fargo seeking a judicial determination regarding the allowability and secured status of Wells Fargo's proof of claim.

The bankruptcy court eventually granted summary judgment for Wells Fargo; it concluded that either: (1) Wells Fargo was a "holder" of the Condo note with the resulting right to enforce

3

it and to file a proof of claim; or (2) if Wells Fargo was not the holder of the Condo note, it was "a nonholder in possession of the [Condo Note] who has the rights of a holder" under Uniform Commercial Code § 3-301.

Debtor appealed. We affirmed. Debtor appealed to the Ninth Circuit; oral argument in that appeal is scheduled for August 30, 2017.

**The attorneys' fee motion** Shortly after it obtained summary judgment, Wells Fargo filed a motion for an award of attorneys' fees based on the attorneys' fees provision in the Condo deed of trust and California law.

The bankruptcy court granted the fee motion. But, it also required briefing on whether the fees should be added to the unsecured part of Wells Fargo's bifurcated claim and treated under the plan and on a choice of law question.

In Debtor's second supplemental brief, Debtor argued, for the first time, that the 2010 assignment of the deed of trust to Wells Fargo was not the operative assignment. She asserted that Wells Fargo's predecessor in interest assigned the trust deed to a different entity in 2013. She argued that "[t]his material fact was concealed" from the Panel and bankruptcy court. As directed, Debtor also submitted a brief on choice of law. She stated that she researched whether there were any material differences between California and Nevada law on the issue; there were none. Thus, she "agrees the Court should apply California law where relevant."

On September 30, 2016, the bankruptcy court issued its decision. In re Baroni ("Baroni II"), 558 B.R. 916 (Bankr. C.D.

4

Cal. 2016). The bankruptcy court concluded: "Wells Fargo's attorneys' fee award should be treated as an unsecured, prepetition claim against [Debtor], subject to treatment and discharge under the plan." Id. at 918.

That same day, the bankruptcy court entered an order granting Wells Fargo's motion, awarding Wells Fargo $50,620.76 in fees and costs, and determining that the award should be added to the allowed proof of claim and subject to treatment and discharge under Debtor's chapter 11 plan.

Debtor timely appealed; Wells Fargo timely cross-appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (C). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in awarding Wells Fargo its attorneys' fees.

Whether the bankruptcy court erred in determining that the awarded attorneys' fees should be added to Wells Fargo's claim and subject to treatment and possible discharge under Debtor's confirmed chapter 11 plan.

**STANDARDS OF REVIEW**

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Picerne Constr. Corp. v. Castellino Villas, A.K.F. LLC (In re Castellino Villas, A.K.F. LLC), 836 F.3d 1028, 1033 (9th Cir. 2016); Boeing North American, Inc. v. Ybarra (In re Ybarra) 424 F.3d 1018, 1021 (2005).

5

## A.   CC-16-1345: The bankruptcy court properly awarded Wells Fargo its attorneys' fees.

The bankruptcy court determined that Wells Fargo was the prevailing party in the adversary proceeding and, under California law, entitled to attorneys' fees.  It incorporated this finding into its final opinion.  558 B.R. at 917.

On appeal, Debtor first argues that if the Ninth Circuit reverses as to Wells Fargo's summary judgment, then Wells Fargo will not be the prevailing party and, thus, the fee award must be reversed.  A potential reversal in regard to summary judgment, however, does not provide an independent basis for reversal; nor is it a basis for an appeal from a post-summary judgment fee award.  See Fed. R. Civ. P. 60(b)(5) (court may relieve a party from a final order if it "is based on an earlier judgment that has been reversed or vacated"); Fed. R. Bankr. P. 9024 (applying Civil Rule 60 in bankruptcy cases).[4]

Debtor next contends that the bankruptcy court clearly erred in awarding Wells Fargo its attorneys' fees because it was not a party to the deed of trust.  Wells Fargo, Debtor says, only sought fees under section 9 of the deed of trust; but the

---

[3]   We address each appeal separately.

[4]   At oral argument, Debtor's counsel informed us that the Ninth Circuit had set her appeal for oral argument; we considered whether to defer submission of this appeal until after the Ninth Circuit issues its decision.  We see no reason to do so.  If the Ninth Circuit reverses and determines that Wells Fargo was not entitled to summary judgment, then Wells Fargo will not be entitled to the award of fees at issue here absent a future court order following a final judgment.

trust deed, Debtor argues, only allowed the "Lender" to request fees. Wells Fargo, Debtor argues, "had a right to demand fees only if it succeeded Countrywide as 'Lender' by acquiring the Baroni deed of trust through an assignment." Debtor's Opening Br. at 18. Debtor appears to concede that, if Wells Fargo acquired the trust deed through an assignment, it had the right to demand attorneys' fees. Cf. Debtor's Reply Br. at 4 ("The 2013 assignment transferred the deed of trust and promissory note to Nationstar Mortgage, LLC. It became a party to those contracts because it succeeded to the rights of the 'Lender'."). Debtor asserts that Bank of America (successor in interest to Countrywide Home Loans, the original lender) assigned the trust deed to Nationstar Mortgage on July 19, 2013.

Wells Fargo responded with numerous arguments; we focus on two: (1) that the bankruptcy court determined on summary judgment that Wells Fargo was the noteholder, was entitled to enforce the note, and was entitled to initiate foreclosure under the trust deed; and (2) that the 2013 assignment was ineffective because the previous assignment in 2010 controls.

Wells Fargo's arguments are convincing; the bankruptcy court granted Wells Fargo summary judgment, and we affirmed. We concluded that the "uncontroverted evidence in the record establish[ed] that Wells Fargo is the creditor for the proof of claim, is entitled to enforce the Henderson note[,] and is the successor beneficiary under the Henderson deed of trust." Baroni I, 2015 WL 5941625, at *8.

In our first opinion, we also addressed Debtor's arguments that the 2010 assignment was somehow invalid; we concluded that

7

none "of [Debtor's] contentions justify reversal." Id. at *7. Debtor now again attacks the 2010 assignment, this time indirectly by arguing that Wells Fargo concealed a material fact: the existence of a later assignment. But to raise this argument, Debtor needed to bring an appropriate reconsideration motion; Debtor did not do so.

Wells Fargo also rightly points out the logical untenability of Debtor's position: if the 2010 assignment to Wells Fargo was effective, as implicitly determined in this case on summary judgment, then only Wells Fargo could assign rights thereafter to another entity; the original assignor had no interests left to assign. Cf. California Bank & Trust v. Piedmont Operating P'ship, 218 Cal. App. 4th 1322, 1347 (2013) ("[U]nless a contrary intention is shown, an assignment vests in the assignee the assigned contract . . . and all rights and remedies incidental thereto." (quotation marks omitted)); Achrem v. Expressway Plaza Ltd. P'ship, 112 Nev. 737, 740 (1996) ("Specifically, when a tort action is assigned, the assignor loses the right to pursue the action."); Law v. Fed. Nat'l Mortg. Ass'n, 2016 WL 7626578, at *2 (Nev. App. Dec. 28, 2016). Debtor rejoinds that Wells Fargo bore the burden to establish an unbroken chain of title; part of that burden, Debtor asserts, is to eliminate any doubts created by the 2013 assignment. But Wells Fargo met this burden; the 2013 assignment does not raise a reasonable doubt.

Accordingly, we reject Debtor's challenge to the bankruptcy court's decision that Wells Fargo was entitled to recover its reasonable attorneys' fees.

8

**B.   CC-1383: The bankruptcy court properly determined that Wells Fargo's attorneys' fee award should be added to its claim and is subject to treatment under Debtor's plan.**

Wells Fargo cross-appeals from the bankruptcy court's determination that the fee award should be added to Wells Fargo's unsecured claim and, thus, treated under Debtor's plan and subject to the discharge.

**1.   The Ninth Circuit's "fair contemplation" test**

"Federal law determines when a claim arises under the Bankruptcy Code." In re Castellino Villas, 836 F.3d at 1034 (quotation marks and alterations omitted).  In some circumstances, a "creditor may have a claim against a debtor for attorneys' fees, even though the creditor has not yet incurred those fees."  Id.  These circumstances include a situation "where the debtor and creditor have entered into a contract that includes an attorneys' fees agreement."  Id.  In such a case, "the creditor may be deemed to have a contingent claim for payment of attorneys' fees even before any fees are incurred."  Id.  That contingent claim "would then include attorneys' fees incurred during and after the bankruptcy case."  Id.  Indeed, "[i]n general, if the creditor incurs the attorneys' fees postpetition [in a Chapter 7 case] in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred."  Id. (quotations marks omitted) (alterations in original).  Put differently, a debtor typically may discharge a creditor's claim

for attorneys' fees based on a pre-petition contract even when those attorneys' fees are incurred postpetition. Id.

In the Ninth Circuit, when determining when a claim arose, we use the "fair contemplation" test. Id.; ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1000 (9th Cir. 2006). Under it, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." In re Castellino Villas, 836 F.3d at 1034 (quotation marks omitted). The exact contours of the fair contemplation test are not precise. See id. ("Despite the breadth of this rule, attorneys' fees incurred by a creditor pursuant to an agreement will not always be in the 'fair contemplation of the parties.'"). For this appeal, three Ninth Circuit cases are relevant when considering the contours of the fair contemplation test.[5]

The first is Siegel v. Federal Home Loan Mortgage Corporation (In re Siegel), 143 F.3d 525 (9th Cir. 1998). In Siegel, the debtor and his partner defaulted on two real estate

---

[5] The parties and bankruptcy court discuss SNTL Holdings Corp. v. Centre Insurance Company (In re SNTL Corp.), 571 F.3d 826 (2009). We do not find it particularly on point. In it, the Ninth Circuit (adopting the BAP's opinion as its own) held that attorneys' fees arising out of a prepetition contract but incurred postpetition fell within the Code's definition of "claim"; accordingly, it rejected the position that § 502(b) compelled the disallowance of the claim simply because it was contingent. 571 F.3d at 843-44. "Because [claimant] is entitled to claim postpetition attorneys' fees as part of its unsecured claim under section 502, we remand for the bankruptcy court to determine whether Centre has satisfied the requisites for allowance of that portion of its claim under the relevant contracts and state law." Id. at 845.

10

loans. Id. at 527-28. He filed a chapter 7 petition. Id. The lender filed two proofs of claim; neither Debtor nor the chapter 7 trustee objected to them. Id. at 528. The debtor received his discharge, the matter closed, and the lender (who had earlier been granted stay relief) foreclosed on the property. Id. Postpetition and post stay relief, but pre-discharge, the debtor and his partner sued the lender in superior court; the lender removed the lawsuit to federal court and eventually prevailed on summary judgment. Id. The lender also recovered its attorneys' fees. Id.

On appeal, the Ninth Circuit affirmed. Id. at 534. As characterized later by the Ninth Circuit, Siegel reasoned that an attorneys' fee claim is a contingent claim "only where the potential for incurring post-discharge liability was contingent 'upon what others might do' and 'entirely out of [the debtor's] hands before he entered bankruptcy.' " In re Castellino Villas, 836 F.3d at 1035 (quoting Siegel, 143 F.3d at 533). "But where the debtor voluntarily undertook a new course of litigation, which we described as a decision 'to return to the fray,' any new liability for attorneys' fees constituted a post-discharge cost." Id. (quoting and citing Siegel, 143 F.3d at 533).

The second relevant case is In re Ybarra, 424 F.3d 1018. There, the debtor sued her employer in state court. Id. at 1020. She later filed a chapter 11 petition, which was even later converted to chapter 7. Id. The chapter 7 trustee settled the lawsuit and received bankruptcy court approval of that settlement over debtor's objection; the state court dismissed the suit. Id. The debtor then amended her bankruptcy

11

schedules to exempt the lawsuit. Id. The bankruptcy court sustained the employer's objection to the exemption, but the BAP reversed and the Ninth Circuit affirmed the BAP. Id. The bankruptcy court then gave debtor the option of accepting a sum certain to satisfy and release the claim or taking ownership of the suit. Id. Debtor chose the latter; she then persuaded the state court to set aside the dismissal. Id. Her victory was short-lived; her employer obtained summary judgment and an award of its attorneys' fees. Id. at 1020-21. The bankruptcy court subsequently determined that the fees incurred postpetition were not discharged. Id. at 1021. On appeal, the Ninth Circuit affirmed. Id.

In Ybarra, the Ninth Circuit reaffirmed the following holding: "claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily returns to the fray." Id. at 1026 (quotation marks and alterations omitted). It continued: "[w]hether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses." Id. The Ninth Circuit then considered the relevant facts: the debtor had exempted the state suit; she chose to pursue the suit rather than accept the trustee's settlement; and she persuaded the state court to set aside the dismissal. Id. at 1026-27. Her actions in reviving the state suit were "sufficiently voluntary and affirmative" to

be considered "returning to the fray." Id. at 1028. The attorneys' fees claim, thus, was not discharged.

The third, and final, relevant case is In re Castellino Villas, 836 F.3d 1028. After a contractor obtained superior court confirmation of an arbitration award against the debtor, the debtor filed a chapter 11 petition. Id. at 1030-31. To secure confirmation of its chapter 11 plan, the debtor entered into a settlement agreement with the contractor; it provided, in essence, that if the contractor prevailed in its foreclosure action in state court, then the contractor "would receive specified payments from the trust account" that the debtor would fund. Id. at 1032. It also provided that if the settlement were approved, the debtor's plan would be modified to include those terms and that the contractor would withdraw its plan objection. Id. The bankruptcy court approved the agreement and confirmed the plan as modified. Id. "As a result, [the debtor] was discharged from bankruptcy." Id. The contractor prevailed in its foreclosure action and sought fees. Id.

On appeal, the Ninth Circuit affirmed the district court's conclusion that the attorneys' fee claim was discharged in the chapter 11 plan. Id. at 1037. It reasoned that neither Ybarra nor Siegel were implicated: the debtor was not relieved of liability and given a fresh start by a discharge; instead, the parties agreed the action would continue post-discharge; and indeed, the terms of the reorganization plan were conditioned on the results of the litigation. Id. at 1036. The Ninth Circuit further reasoned that the debtor did not pursue a new course of litigation but rather continued the prepetition legal action.

13

Id. In sum: "The pertinent question is whether the right to obtain attorneys' fees in the litigation is within the fair contemplation of the parties, and [contractor] provides no reason why it would not have fairly contemplated that the parties would proceed with litigation that had not been resolved in bankruptcy." Id. at 1037. Thus, the Ninth Circuit held that the attorneys' fee claim was discharged because post-discharge conduct did not amount to a whole new course of litigation. Id. at 1031.

Although neither Siegel nor Ybarra discuss the fair contemplation test, the Ninth Circuit, in In re Castellino Villas, concluded that the "analysis in these cases is consistent with our fair contemplation test." 836 F.3d at 1035. It explained:

> When parties engaged in prepetition litigation that could lead to an award of attorneys' fees, they may fairly contemplate that the prevailing party will be awarded those fees. Therefore, a creditor's contingent claim to such fees is discharged in bankruptcy, even if some fees are incurred post-petition. But when the prepetition litigation is resolved in bankruptcy so that any claim (including a contingent claim for attorneys' fees) against the debtor would be discharged, we cannot say that the debtor's affirmative action to commence what amounts to a whole new course of litigation was in the fair contemplation of the parties when the debtor filed a bankruptcy petition. Rather, the debtor's decision to eschew the fresh start provided by the bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition.

Id. at 1035-36 (citation and quotation marks omitted).

### 2. The bankruptcy court correctly found that Wells Fargo's attorneys' fees were treatable under the plan.

Distilled to its essentials, the issue is simple: When did

14

Wells Fargo's claim for attorneys' fees arise? Put in the language of the Ninth Circuit's test: when could Wells Fargo fairly contemplate that it would have a claim for attorneys' fees? The bankruptcy court found that Wells Fargo could fairly and reasonably contemplate before plan confirmation that it would incur post-confirmation attorneys' fees. On appeal, Wells Fargo contends this was error.

One prefatory comment is important. This is an individual chapter 11 case; Debtor has not yet received her discharge. In individual chapter 11 cases, "confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan" unless the court orders otherwise. 11 U.S.C. § 1141(d)(5)(A).[6]

Neither party disputes that the relevant contract and deed of trust were signed prepetition. What's more, Wells Fargo strenuously argues that it was entitled to its attorneys' fees by virtue of the trust deed — a prepetition contract. And "[p]ostpetition fees can be fairly contemplated when the parties

---

[6] This statutory language is slightly different than § 1141(d)(1), which provides that confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1). As the Ninth Circuit recognized in In re Castellino Villas, it has "sometimes referred to pre-**petition** claims in discussing whether claims discharged in a Chapter 11 bankruptcy have subsequently been revived." 836 F.3d at 1033 n.3. It declined to resolve the inconsistency between its use of "prepetition" and the Code's use of "pre-confirmation" because the claim at issue necessarily arose prepetition; for simplicity, it referred to prepetition claims throughout. Id. In any event, the parties and the bankruptcy court all recognize that, in this case, the question is whether the claim arose pre-confirmation.

have provided for them in their contracts and they, thus, are contingent claims as of the petition date." In re SNTL Corp., 571 F.3d at 844. Wells Fargo further concedes that "Baroni's Chapter 11 plan threatened post-confirmation litigation . . . ." Wells Fargo's Br. at 20. Wells Fargo thus rightly recognizes that it needs to re-characterize Debtor's threatened post-confirmation litigation as not within the parties' fair contemplation.

Accordingly, Wells Fargo frames the issue as "whether a debtor's pre-confirmation threat of future litigation, ipso facto, renders any claim for attorney fees in the threatened suit a pre-confirmation claim." Wells Fargo's Br. at 20. And it asks us to hold "that an attorney fee claim arising from post-petition or post-confirmation litigation, initiated by the debtor, is fairly contemplated by the creditor only when the creditor is or should be aware of some objectively reasonable ground for the threatened future litigation." Wells Fargo's Br. at 26.[7]

We decline to do so.

First, the bankruptcy court rightly concluded that this case is more factually similar to In re Castellino Villas than Siegel or In re Ybarra. We will quote its well-reasoned analysis at some length.

The bankruptcy court started by considering what **type** of claim Wells Fargo held. It determined that, similar to the

[7] At oral argument, Wells Fargo's counsel said that it was not asking for a "frivolous and malicious" exception to the fair contemplation test.

16

creditors in In re SNTL Corp. and In re Castellino, Wells Fargo:

> held a contingent and unliquidated claim for attorneys' fees under its prepetition loan documents with [Debtor], at the time she filed her chapter 11 petition. Wells Fargo's claim for attorneys' fees became liquidated and non-contingent following confirmation of her plan, which is when the attorneys' fees were incurred and a fee award granted. But this does not alter the fact that the claim arose from a prepetition agreement and existed before confirmation of the Plan (albeit contingent and unliquidated).

Baroni II, 558 B.R. at 927. Next, the bankruptcy court reasoned that Wells Fargo could fairly and reasonably contemplate that it would incur attorneys' fees related to this claim in Debtor's bankruptcy and that it would, correspondingly, have an attorneys' fees claim for those fees:

> That [Debtor]'s objection to the Wells Fargo proof of claim was litigated largely after entry of the order confirming the Plan is of no moment. The Plan (and the accompanying disclosure statement) put Wells Fargo on notice that [Debtor] objected to the Wells Fargo claim, indicated that the claim would be litigated after confirmation of the Plan, and specifically provided for alternative treatment under the Plan, depending on the outcome of the litigation. Under the Plan, [Debtor] must make payments into a trust account in amounts specified in the Plan. If the Court sustained [Debtor]'s objection, and disallowed the Wells Fargo claim, the Plan provides that the money would be returned to [Debtor]. If the Court denied the objection, and allowed the Wells Fargo claim, the money would go to Wells Fargo, as would future payments in accordance with the terms of the Plan.

Id. at 927.

What's more, Wells Fargo could "fairly and reasonably contemplate" before plan confirmation that it would incur post-confirmation fees "because the Plan: (i) advised of [Debtor's] objection to the Wells Fargo claim, (ii) contemplated that the allowance of the claim would be litigated after plan confirmation, and (iii) provided for alternative treatment

17

depending on the outcome of that litigation." Id.

The bankruptcy court reasoned that this treatment under the Plan was analogous to In re Castellino Villas, where "the plan contemplated that the parties would litigate the priority of the creditor's lien in a state court action and provided for alternative treatment depending on the outcome of the litigation." Id. at 928. In that case, the Ninth Circuit concluded that the attorneys' fees could be fairly and reasonably contemplated before plan confirmation. Id. The same result, the bankruptcy court concluded, "should obtain here, where the plan put Wells Fargo on notice that the litigation over claim allowance would occur post-confirmation." Id.

True, the bankruptcy court acknowledged, in In re Castellino Villas, the parties entered into a settlement agreement and agreed that the litigation would occur post-confirmation. Id. Here, by contrast, the "procedure for litigating allowance of the claim is simply baked into the Plan." Id. But we agree with the bankruptcy court that this difference is not significant. See id. First, a chapter 11 plan is a contract between the debtor and its creditors. Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993); Knupfer v. Wolfberg (In re Wolfberg), 255 B.R. 879, 883 (9th Cir. BAP 2000), aff'd, 37 F. App'x 891 (9th Cir. 2002). Second, it is binding on all creditors. 11 U.S.C. § 1141(a). Third, in any event, the "Plan undeniably put Wells Fargo on notice that allowance of its claim would be adjudicated after confirmation of the Plan." Baroni II, 558 B.R. at 928.

18

Wells Fargo argues that "[s]ound bankruptcy policy counsels against the bankruptcy court's overly simplistic test." Wells Fargo's Br. at 22. It explains that, under the bankruptcy court's holding, a "debtor can easily manipulate a bankruptcy case" because all "the debtor need do is send each creditor . . . an 'I intend to sue you' letter . . . before confirmation of a Chapter 11 plan." Id. This, Wells Fargo suggests, would let debtors use the discharge as a sword "no matter how frivolous the claim on which it sues." Id.

But this is not persuasive for at least two reasons. First, Wells Fargo did (and still does) not seem to apprehend the importance of the plan confirmation process. It had an opportunity to object to its treatment under the Plan. As the bankruptcy court put it: "Indeed, because these fees were foreseeable, it was incumbent on Wells Fargo to raise any concerns it had about the treatment and discharge of that claim under the Plan at the time the Plan was confirmed." Baroni II, 558 B.R. at 929. Based on the record before us, Wells Fargo did not so object to the Plan; now, faced with the consequences of that failure, it seeks an end-run around the terms of the confirmed plan.

Wells Fargo contends that this approach is counter-productive to the reorganization process because it would require any party "that has even the faintest notion that post-petition litigation may ensue" to object to the plan and require the bankruptcy court to make speculative rulings about possible litigation. Wells Fargo Br. at 25-26. We disagree; this is an unfounded concern. Wells Fargo tries to generalize beyond the

19

present facts: Debtor's plan promised further litigation.

Second, the bankruptcy court identified sound bankruptcy policy supporting its reasoning. This is a chapter 11 case, similar to In re SNTL Corp. and In re Castellino Villas and dissimilar to Siegel and In re Ybarra, which are chapter 7 cases. Baroni II, 558 B.R. at 928 n.8. There are structural differences between the chapters. Id. In chapter 11, a plan may authorize the debtor to retain and enforce a claim or interest. Id. (citing 11 U.S.C. § 1123(b)(3)(B)). "Thus it is not uncommon for a chapter 11 plan to defer the process of objecting to proofs of claim or pursuing affirmative causes of action until the post-confirmation period, in order to expedite the Debtor's emergence from chapter 11 and minimize administrative fees and costs." Id. There is no analogue in chapter 7. Id.

Wells Fargo unsuccessfully attempts to distinguish In re SNTL Corp. and In re Castellino Villas. In In re SNTL Corp., Wells Fargo explains, "[f]urther litigation was certain to occur and there was a reasonable basis for pursuing it." Wells Fargo's Br. at 21. So also, Wells Fargo asserts, in In re SNTL Corp.: "litigation of that claim was not just threatened, it was virtually certain . . . ." Id. at 21-22. Here, the bankruptcy court found, and we agree, that Debtor's further litigation was all but guaranteed. Debtor's confirmed plan required it.

Wells Fargo argues that this case is similar to Siegel because in both instances the debtor initiated a new round of litigation postpetition and eschewed the fresh start.

Wells Fargo contends that, under the bankruptcy court's analysis, all the Siegel debtor would have needed to do is send a threatening letter. We disagree. The bankruptcy court properly distinguished Siegel:

> The court in Siegel held that the debtor "returned to the fray" after (i) the debtor failed to object to the lender's claim during his chapter 7 case, (ii) the claim was deemed allowed, (iii) the debtor obtained a discharge of all liabilities under his agreements with the lender, but (iv) then "returned to the fray" by initiating new litigation against the lender based on those documents. Here, the litigation generating attorneys' fees was not initiated after the claims of the creditor were allowed and thereafter discharged in the bankruptcy case. The litigation generating the fees is over the very allowance of the creditor's claim in the bankruptcy case and, as a result, the treatment to which it is entitled under [Debtor]'s confirmed chapter 11 plan. Moreover, because this is an individual chapter 11 case, there was no discharge upon confirmation and a discharge has yet to issue. These circumstances do not raise the sort of fairness concerns that the circumstances did in Siegel.

Id. at 928-29. Again, the structural differences between Siegel's chapter 7 debtor and the present chapter 11 debtor are important; Wells Fargo does not appropriately address them.

Wells Fargo next argues that the case is similar to Ybarra because in Ybarra "the debtor was literally in the middle of a lawsuit both when the debtor filed her bankruptcy petition and when her case was converted to Chapter 7. Accordingly, the creditor was clearly on notice that the lawsuit could continue post-discharge." Wells Fargo Br. at 24 (citation and footnote omitted). But Wells Fargo's reading of Ybarra misses that the lawsuit had been fully resolved and that the Ybarra debtor revived the lawsuit after it was fully resolved. Here, Debtor's objection to Wells Fargo's claim had not been fully resolved. As the bankruptcy court explained:

> The facts of the instant case are even farther afield of In re Ybarra. In that case the debtor took affirmative steps postpetition to revive a prepetition cause of action against her employer, after (i) the chapter 7 trustee for her estate had negotiated a settlement of it, (ii) the court had approved the settlement, and (iii) the state court had dismissed the debtor's prepetition lawsuit. Under those circumstances, the postpetition attorneys' fees incurred by the employer defending the suit were simply not within the fair contemplation of the parties at the time the case was filed (i.e., the cleavage point for claims subject to discharge under chapter 7), and permitting the discharge of those fees would have been unfair. Nothing approaching those circumstances is present in the instant case. Prior to pursuing her litigation against Wells Fargo, [Debtor] did nothing (nor allowed anything to happen) amounting to a resolution or adjudication of Wells Fargo's claims.

Baroni II, 558 B.R. at 929 (citation omitted). We agree. Wells Fargo has not shown that the facts of the present case come close to those of In re Ybarra.

Broadly, central to Wells Fargo's argument is its suggestion that baseless litigation is "not within the creditor's 'fair contemplation' even if threatened." Wells Fargo Br. at 27. It argues that the relevant caselaw does not state that a creditor "fairly contemplates" an attorneys' fee claim whenever a debtor threatens suit no matter how baseless the suit is. We reject Wells Fargo's reasoning for the reasons stated above. We have further concerns.

First, Wells Fargo does not point to any finding that Debtor's suit was, in fact, baseless. Instead, it simply asserts that because Debtor lost at summary judgment she "lacked any reasonable, objective basis for the threatened litigation." Wells Fargo Br. at 27. True, we affirmed the bankruptcy court's grant of summary judgment and concluded that "the uncontroverted

22

evidence in the record establish[ed] that Wells Fargo is the creditor for the proof of claim, is entitled to enforce the Henderson note[,] and is the successor beneficiary under the Henderson deed of trust." Baroni I, 2015 WL 6941625, at *8. But this does not rise to the level of a finding that Debtor's suit was baseless. Thus, even if we were inclined to adopt Wells Fargo's proposed holding, it has not shown that it would apply to this case.

Second, Wells Fargo cites no caselaw or other authority suggesting that we need to create a "baseless litigation" exception to the fair contemplation test. To the contrary, in Siegel, the Ninth Circuit stated that "[a]ny doubts regarding the dischargeability of a claim should be resolved in favor of finding that a contingent claim existed." 143 F.3d at 532.

Third, nor are we convinced this exception is otherwise necessary; litigants have other procedural mechanisms to combat frivolous suits or bad-faith acts. See, e.g., Fed. R. Bankr. P. 9011; Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009) ("A bankruptcy court's inherent power allows it to sanction 'bad faith' or 'willful misconduct,' even in the absence of express statutory authority to do so. It also allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." (citation and quotation marks omitted)), abrogated on other grounds by Bullard v. Blue Hills Bank, 135 S. Ct. 1864 (2015), as recognized by Gugliuzza v. Fed. Trade Comm'n (In re Gugliuzza), 852 F.3d 884, 898 (9th Cir. 2017).

23

**CONCLUSION**

In sum, the bankruptcy court properly awarded Wells Fargo its attorneys' fees and determined that those fees arose pre-confirmation. Accordingly, we AFFIRM.